UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DANELL WILSON-PERLMAN, et al.,<br><br>                                    Plaintiff(s),<br><br>         v.<br><br>ANDREW J. MACKAY, et al.,<br><br>                                    Defendant(s). | Case No. 2:15-CV-285 JCM (VCF)<br><br>ORDER |

Presently before the court is defendants Andrew J. MacKay, George Assad, Keith Sakelhide, Marilyn Skibinski, Liz Babcock, James Day, David Newton, Yvonne Shelton, and Lidia Aronova's motion to dismiss. (Doc. # 22). Plaintiffs Danell Wilson-Perlman, Ron Perlman (the "Perlmans"), Steven Saxon, and Patrick Saxon (the "Saxons") filed a response in opposition (doc. # 25), and defendants filed a reply. (Doc. # 26).

**I. Background**

This case concerns constitutional challenges to three Nevada laws which the plaintiffs allege prohibit them from "earning a living in the occupation of their choice." (Doc. # 1 at 2–3).

In 2006, the Perlmans began operating Reno Tahoe Limousine, a limousine transportation company in the Reno-Tahoe area. (Doc. # 1 at 5–6). The Perlmans are allowed to operate on a "restricted certificate" which limits their operations to utilizing seven limousines in their fleet. (*Id.* at 6). The Perlmans allege that they are the only limousine company in the Reno-Tahoe area which is subject to this restriction. (*Id.*). The Perlmans state that their restricted certificate requires that they demonstrate to the Nevada Transportation Authority ("NTA") that they will not compete with existing limousine companies if they wish to operate more limousines within the state of Nevada. (*Id.*).

In August 2012, the Perlmans applied for a modification to their certificate, requesting that the NTA allow them to operate no more than twenty vehicles. (*Id.* at 9). On July 7, 2014, the NTA

**James C. Mahan**
**U.S. District Judge**

held a hearing regarding the Perlmans' application. (*Id.* at 10). The NTA subsequently issued a written decision denying the Perlmans' application on the basis that granting it would not foster healthy competition. (*Id.*).

The Saxons are owners and operators of Affordable Moving and Storage, a California business. (*Id.* at 7). The Saxons have not applied for a certificate to operate in Nevada because they allege that applicable Nevada laws establish a procedure which imposes "significant financial cost and delay on [their] right to pursue an ordinary occupation," depriving them of their "constitutional right to engage in an occupation of their choice." (*Id.*).

On February 18, 2015, plaintiffs filed a complaint pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief, challenging the constitutionality of several state laws on four separate bases: (1) deprivation of liberty without due process of law; (2) equal protection; (3) equal protection and due process of law for vagueness; and (4) abridgment of privileges or immunities. (Doc. #1). Plaintiffs challenge three laws: Nevada Revised Statute ("NRS") §§ 706.391, 706.151, and Nevada Administrative Code ("NAC") § 706.1375 (the "challenged laws"). (*Id.)* Plaintiffs claim that these laws collectively form a "competitor's veto" that stifles economic competition and unconstitutionally prohibits the plaintiffs from earning a living in the occupation of their choice. (*Id.* at 1–2).

Plaintiffs filed suit against each of the named defendants in their official capacity as state employees. (*Id.* at 3–5). Defendant MacKay is the chairman of the NTA. Defendants Assad and Sakelhide are commissioners of the NTA. Defendant Skibinski is a deputy commissioner of the NTA. Defendant Babcock is an applications manager for the NTA. Defendant Day is an administrative attorney for the NTA. Defendant Newton is a Nevada senior deputy attorney general. Finally, defendants Shelton and Aronova are financial analysts for the NTA. (*Id.*).

Defendants now seek dismissal of plaintiffs' claims pursuant to FRCP 12(b)(1) for lack of subject matter jurisdiction and FRCP 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. # 22).

**II. Legal standards**

**A. Subject matter jurisdiction and ripeness**

A court must dismiss a plaintiff's complaint for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). Federal Rule of Civil Procedure 12(b)(1) permits a party to assert this defense by motion. *Id.* Although the defendant is the moving party in a motion to dismiss

**James C. Mahan**
**U.S. District Judge**

- 2 -

brought under rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court. *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (*citing McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

"A plaintiff suing in federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention . . . must dismiss the case." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001). When presented as a factual challenge, a rule 12(b)(1) motion can be supported by affidavits or other evidence outside of the pleadings. *United States v. LSL Biotechs*, 379 F.3d 672, 700 n.14 (9th Cir. 2004) (*citing St. Clair v. City of Chicago*, 880 F.2d 199, 201 (9th Cir. 1989)).

Because ripeness pertains to a federal court's subject matter jurisdiction, it is properly the subject of a rule 12(b)(1) motion to dismiss. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Subject matter jurisdiction does not exist over claims which are not ripe for adjudication. *Cardenas v. Anzai*, 311 F.3d 929 (9th Cir. 2001).

**B. Failure to state a claim upon which relief may be granted**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.*

**James C. Mahan**
**U.S. District Judge**

- 3 -

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal quotations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III. Discussion

#### A. Ripeness of Saxons' claims

Defendants first seek dismissal of all claims brought by plaintiffs Steven Saxon and Patrick Saxon pursuant to FED. R. CIV. P. 12(b)(1), arguing that those plaintiffs' claims are not ripe for judicial review because the Saxons have not applied for a certificate to operate within the state of Nevada under the challenged laws. (Doc. # 22 at 2). Therefore, defendants assert that any injury the Saxons claim is speculative. (*Id.* at 5).

Plaintiffs first argue that the Saxons need not have standing because it is sufficient that the other plaintiffs, the Perlmans, have standing. (Doc. # 25 at 4). They argue further that the Saxons' claims are ripe now because they are seeking prospective relief and "need not wait for the government to take action against [them] before bringing suit." (*Id.* at 6). The Saxons allege that they are suffering actual injury because Nevada's unconstitutional application procedure is stopping them from expanding their business to the state of Nevada. (*Id.* at 6–7). The Saxons assert that they would be subject to penalties if they were to begin operations in Nevada without first

James C. Mahan
U.S. District Judge

- 4 -

obtaining the requisite license, and claim that they do not need to subject themselves to an unconstitutional process before challenging its constitutionality. (*Id.*).

The U.S. Constitution requires that there must be an actual case or controversy in order to invoke a court's jurisdiction. U.S. CONST. art. III § 2, cl. 1. Plaintiffs must allege threatened or actual injury resulting from the challenged state actions before a federal court may assume jurisdiction. *O'Shea v. Littleton*, 414 U.S. 488, 493, 94 S. Ct. 669, 675, 38 L. Ed. 2d 674 (1974) (*citing Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973)). (internal quotations omitted).

"A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) (*citing O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). The injury or threat of injury must be real and immediate, not conjectural or hypothetical. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (*citing Golden v. Zwickler*, 394 U.S. 103, 109–110 (1969)). (internal quotations omitted).

The Saxons' alleged injuries are not ripe for adjudication. First, the Saxons' claims are not ripe simply because the Perlmans' claims are ripe. Plaintiffs cite to several Supreme Court decisions for the proposition that one plaintiff may confer standing on another. *See, e.g., Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,* 547 U.S. 47, 53 (2006); (doc. # 25 at 5–6). These cases do not directly address the question of whether one plaintiff can confer standing on another plaintiff who does not meet the case and controversy requirement. *See Rumsfeld* at 53; *Bowsher v. Synar*, 478 U.S. 714, 721, 106 S. Ct. 3181, 3185, 92 L. Ed. 2d 583 (1986) (citing *Sec'y of the Interior v. California*, 464 U.S. 312, 376, 104 S. Ct. 656, 689, 78 L. Ed. 2d 496 (1984)); *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 299, n. 11, 318, 99 S. Ct. 2301, 2319, 60 L. Ed. 2d 895 (1979) (citing *Buckley v. Valeo*, 424 U.S. 1, 12, 96 S. Ct. 612, 631, 46 L. Ed. 2d 659 (1976)).

Instead, appellants in the cited cases contested whether there was a case or controversy with respect to any plaintiff. *See, e.g., Babbitt* at 299, n. 11. Because of the nature of the challenge, the Court only determined that at least one plaintiff had standing in each case, and declined to address the standing of the similarly situated appellees. *Id.* The Court did not directly address the question of whether one plaintiff could confer standing on another in any case cited. *See, e.g.*, *id.*

**James C. Mahan**
**U.S. District Judge**

- 5 -

In other cases though, the Court has affirmed district court dismissal of certain claims or certain plaintiffs for lack of standing while allowing other claims and plaintiffs to proceed. *See, e.g. McConnell v. Fed. Election Comm'n,* 540 U.S. 93, 225–28, 124 S. Ct. 619, 707, 157 L. Ed. 2d 491 (2003) (overruled on other grounds by *Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010)). Thus it is incumbent on the district court to make a standing determination with respect to each claim and each plaintiff.

The Saxons' claims are not ripe. The Saxons argue that they are seeking "prospective relief" and therefore are not required to apply for a license to challenge the licensing scheme. (*See* doc. # 25 at 12 (citing *Merrifield v. Lockyer,* 547 F.3d 978 (9th Cir. 2008))). In *Merrifield*, however, the plaintiff's license application under the challenged scheme would be denied with certainty. *See Merrifield* at 980. In cases where it is not clear how the challenged statutory scheme would be applied to its challenger, the Ninth Circuit has held that the plaintiff's claims are not ripe. *See Underwood v. Mackay*, 614 F. App'x 871, 872 (9th Cir. 2015).

In fact, the Ninth Circuit has upheld the dismissal of plaintiffs' claims for lack of ripeness by a court in this very district, under an identical fact pattern. *See id.*, *Underwood v. Mackay*, No. 3:12-CV-00533-MMD, 2013 WL 3270564, at *6 (D. Nev. June 26, 2013) aff'd, 614 F. App'x 871 (9th Cir. 2015). In *Underwood*, a moving company and its principal challenged NRS §§ 706.391 and 706.151, as well as NAC § 706.1375, the exact statutes challenged here. *See Underwood,* 614 F. App'x 871−72. The *Underwood* plaintiffs sought declaratory and injunctive relief on grounds of equal protection, due process, vagueness, and privileges and immunities, just as the Saxons do. *Id.*

The Ninth Circuit explained that prudential ripeness concerns of fitness of the issues for judicial review drive the "question of timing," preventing the courts from entangling themselves in abstract disagreements where additional factual development would enhance the court's ability to address the legal issues. The appeal court upheld the district court's dismissal for lack of ripeness:

> [p]laintiffs argue that a party is not necessarily required to apply for a license in order to challenge a licensing scheme. *See, e.g., City of Chicago v. Atchison, Topeka & Santa Fe Ry. Co.*, 357 U.S. 77, 89, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958); *Inland Empire Chapter of Associated Gen. Contractors of Am. v. Dear*, 77 F.3d 296, 299 (9th Cir.1996). In contrast to the cases that Plaintiffs cite, however, it is not at all clear how the statutes at issue would be applied to Plaintiffs, whether the statutes would be applied unconstitutionally, or whether the statutes would operate to deprive Plaintiffs of anything. *See Thomas*, 220 F.3d at 1142. In particular, subsection 3 of NRS § 706.391 seems to prevent the precise harm that Plaintiffs

**James C. Mahan**
**U.S. District Judge**

- 6 -

   fear by forbidding Defendants from deciding an application on competitive grounds alone. Without the denial of an application, Plaintiffs' claimed injury is too speculative and hypothetical to be fit for review.

*Underwood v. Mackay*, 614 F. App'x 871, 872 (9th Cir. 2015).

  The Saxons, like the plaintiffs in *Underwood,* have not been denied an application. *See id.* Indeed, they have not even filed one. (Doc. # 25 at 12–13). "Without the denial of an application, [p]laintiffs' claimed injury is too speculative and hypothetical to be fit for review." *Underwood*, 614 F. App'x 872. Subject matter jurisdiction does not exist over claims which are not ripe for adjudication. *Cardenas v. Anzai*, 311 F.3d 929 (9th Cir. 2001). Accordingly, the Saxons' claims will be dismissed for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1).

### A. Failure to state a claim

  Defendants seek dismissal of the Perlmans' claims pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. # 22). Defendants urge this court to take judicial notice of facts outside of the pleadings and treat their motion as one for summary judgment if necessary. *See* FED. R. CIV. P. 12(d);[1] (*Id.* at 5). The court takes judicial notice of the Nevada statutes, but declines to convert the motion to a motion for summary judgment under FED. R. CIV. P. 12(d); FED. R. EVID. 201(b); *Chaker v. Crogan*, 438 F.3d 1215, 1223 n. 8 (9th Cir. 2005).

#### i. Eleventh amendment immunity of certain defendants

  Five of the defendants, Skibinski, Babcock, Day, Shelton, and Aranova, seek dismissal of all claims against them because they have no duties to enforce the challenged laws. Therefore, they argue they are entitled to Eleventh Amendment immunity. (Doc. # 22 at 14–15).

  Plaintiffs respond that these defendants are proper parties because they have some connection with the enforcement of the challenged laws, citing to *Ex parte Young*, 209 U.S. 123, 157 (1908). (Doc. # 25 at 28). Plaintiffs allege that, because these defendants take part in the administration of the hearing procedures and participate in granting licenses under the challenged laws, they are sufficiently connected with the enforcement of the challenged laws, and are therefore properly named parties. (*Id.*).

  The defendants argue that they do not have a sufficiently direct connection with the enforcement of the act. (Doc. #22 at 14). Four of the defendants—Babcock, Day, Shelton, and

---

[1] Defendants cite to FED. R. CIV. P. 12(b)(7) in support of their request for this court to treat their motion as one for summary judgment if it considers matters outside of the pleadings. FED. R. CIV. P. 12(d) actually grants the court that power.

**James C. Mahan**
**U.S. District Judge**

- 7 -

Aranova—are employees of the NTA and do not hold the particularized duties to enforce the laws at issue. These NTA employees are immune from suit under the Eleventh Amendment because they have no enforcement power over the challenged rule. *See, Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). The complaint will therefore be dismissed with respect to defendants Babcock, Day, Shelton, and Aranova.

Defendants argue that although Skibinski is the deputy commissioner, she has only a general supervisory role over those charged with enforcing the law and the rest of her duties are administrative. (Doc. #22 at 14). Skibinski's duties as the deputy commissioner, however, include developing and implementing policies and procedures to ensure the efficient operation of the Authority. *See* NRS § 706.176(2)(b). Her duties also include "overseeing compliance with and enforcement of state statutes . . ." *See* NRS § 706.176(2)(c)(3). Accordingly, defendant Skibinski has enforcement power over the challenged laws and therefore is not afforded Eleventh Amendment immunity.

### ii.     Due process and equal protection claims

Defendants seek dismissal of plaintiffs' first and second claims for relief, arguing that plaintiffs' complaint fails to state a claim for violation of the due process or equal protection clauses of the Fourteenth Amendment because the challenged laws are rationally related to legitimate state interests. (Doc. # 22 at 6–11). The liberty interest to engage in one's chosen profession is not a fundamental right under the Fourteenth Amendment's Due Process Clause, but is a general due process right that is subject to reasonable government regulation. *Conn v. Gabbert,* 526 U.S. 286, 291–92 (1999). Plaintiffs' equal protection claim does not involve a suspect or quasi-suspect class. Thus, both claims are subject to rational basis review and the statute will pass constitutional muster if it is rationally related to a legitimate state interest. *City of New Orleans v. Dukes*, 427 U.S. 297, 303.

Plaintiffs respond that determining whether the laws lack a rational basis is inappropriate at the motion to dismiss stage, as such a determination requires discovery and fact finding. (Doc. # 25 at 16). The plaintiffs argue that they need discovery in order to determine whether the challenged laws truly bear a rational relationship to a legitimate government interest. (Doc. # 25 at 12). It is not clear to the court, however, what facts exist for which there is any dispute, or how discovery would illuminate any additional facts material to a rational basis review.

**James C. Mahan**
**U.S. District Judge**

Plaintiffs argue that parties challenging legislation under the equal protection clause may introduce evidence supporting the claim that the statute has no rational basis, citing *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456 (1981). While the *Clover Leaf Creamery* decision does hold that consideration of evidence may be appropriate in such a challenge, it continues in the very same sentence to state that a challenging party "cannot prevail so long as "it is evident from all the considerations presented to [the legislature], and those of which we may take judicial notice, that the question is at least debatable." *Id.* at 464 (quoting *United States v. Carolene Products Co.*, 304 U.S. 144, 153–154, (1938)).

Indeed, In *Carolene Products*, the Court held that: "such inquiries, where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it." *United States v. Carolene Products Co.*, 304 U.S. 144, 153–154, (1938) Finding that "it is evident from all the considerations presented to Congress, and those of which we may take judicial notice," the Court held that the challenged provisions of the Filled Milk Act survived rational basis review. *Id.* The Court reasoned that because the question of whether and how to regulate commerce in filled milk was a decision for Congress, "neither the finding of a court arrived at by weighing the evidence, nor the verdict of a jury can be substituted for it." *Id.*

It is thus appropriate for this court to consider whether plaintiffs have stated valid claims for relief under theories of substantive due process and equal protection based on the considerations presented to the Nevada legislature or those of which the court has taken judicial notice, including the statute itself. *See id.* If the court finds that the question of whether there is a rational basis for the challenged provisions is "at least debatable," it will substitute neither its "finding . . . arrived at by weighing the evidence, nor the verdict of a jury" for the decisions of the Nevada legislature. *Clover Leaf Creamery*, 449 U.S. at 464; *Carolene Products Co.*, 304 U.S. 153–54.

The court will now turn to the question of whether a rational basis for the challenged provisions exists. Plaintiffs' complaint contains factual allegations that the challenged laws operate to stifle economic competition (doc. # 1 at 12) and that the challenged laws give preferential treatment to existing businesses. (*Id.* at 13). Plaintiffs argue that the challenged provisions operate *only* to protect established companies from new businesses. (Doc. # 25 at 18). They contend that this is not a legitimate state interest and that the challenged provisions bear no rational relationship

**James C. Mahan**
**U.S. District Judge**

- 9 -

to any other legitimate state interest. Specifically, they claim that the defendants' stated rationales hold no water and that the challenged provisions serve no purpose beyond protectionism.

Defendants argue that plaintiffs' allegations consist mostly of legal conclusions and not facts. Furthermore, defendants contend that plaintiffs fail to acknowledge that a statute is presumed to be constitutional "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). Under *Beach Commc'ns.*, where there are plausible reasons for a legislature's actions, the court's inquiry is at an end. *Id.* (quoting *United States Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 172 (1980). Indeed, those attacking the rationality of a legislative decision have the burden "to negative every conceivable basis which might support it." *Id.* (quoting *Lehnhausen* v. Lake Shore Auto Parts Co., 410 U.S. 356, 364 (1973).

The plaintiffs in this case have not carried that burden. First, the court notes at the outset that one of the challenged laws, N.R.S. § 706.391(3), expressly states that the Nevada Transit Authority's finding that "the potential creation of competition in a territory which may be caused by the granting of the certificate or modification, by itself, will unreasonably and adversely affect other carriers operating in the territory" is not a proper basis for denying an application. *See* NRS § 706.391(3). This provision disarms plaintiff's argument that the legislature's only intent was to protect existing carriers. The legislature included an express prohibition against denying applications purely to protect existing carriers.

Moreover, another of the challenged provisions, NRS § 706.151, in which the Nevada legislature declared the purpose and policy behind chapter 706, includes the following rational bases for the statutory scheme: to provide for fair and impartial regulation; to promote safe, adequate, economical and efficient service, to foster sound economic conditions in motor transportation, and to discourage any practices which would tend to increase or create competition that may be detrimental to the traveling and shipping public or the motor carrier business within the state. *See* NRS § 706.151.

In addition, NRS § 706.391, which lists the standards for review of certificate applications, includes the following considerations: financial and operational fitness, ability and willingness to perform the services or a common motor carrier; consistency with the principles set for in § 706.151, *supra*, the safety and convenience of the traveling public and the existing motor carrier business in Nevada, continuity of service, and fitness of the proposed market. *See* NRS § 706.391.

**James C. Mahan**
**U.S. District Judge**

- 10 -

The court finds that the standards for review of an application listed under § 706.391 are rationally related to the legitimate state interests listed in § 706.151. Without looking beyond the statute itself, the court finds facts that are more than "reasonably conceivable" and provide a rational basis for the legislation. *See Beach Commc'ns.*, 508 U.S. at 313.

Because plaintiff has failed to negate these conceivable bases for the legislation, the court need not inquire further. *See id.* Plaintiffs' substantive due process and equal protection claims fail to state a plausible challenge to NRS §§ 706.151, 706.391, and NRS § 706.1375 under rational basis review. The claims will therefore be dismissed without prejudice.

### iii.     Vagueness claims

Defendants seek dismissal of plaintiffs' third claim for relief, urging that plaintiffs' complaint fails to state a claim that the challenged laws contain terms that are unconstitutionally vague. (Doc. # 22 at 12–13).

Plaintiffs' complaint alleges that the challenged laws "give no guidance to the meaning of terms," leaving applicants to guess at what they must prove in order to have their application approved. (Doc. # 1 at 14). Plaintiffs argue that this gives "unlimited and unguided discretion [to] NTA officials" in deciding whether or not to issue or expand licenses. (*Id.*). Specifically, plaintiffs argue that the following phrases are unconstitutionally vague: "sound economic conditions;" "unreasonably and adversely affect other carriers operating in the territory;" "competition that may be detrimental to . . . the motor carrier business;" and "beneficial to the traveling public." (Doc. #25 at 19); s*ee* NRS §§ 706.391(2)(a) and (c); NRS 706.151(1)(e); and NEV. ADMIN. CODE § 706.1375(2)(m)).

The United States Constitution prohibits states from depriving "any person of life, liberty, or property, without due process of law . . . ." U.S. Const. Am. XVI § 1. The Supreme Court has firmly established that "laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 132 S.Ct. 2307, 2317 (2012).

When faced with a constitutional challenge, the court must look to the words of the statute itself as well as state court interpretations of the same or similar statutes to determine the statute's "allowable meaning." *California Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1146–1147 (9th Cir. 2001) (*citing Grayned v. City of Rockford*, 408 U.S. 104, 109–10 (1972)). "Condemned to the use of words, we can never expect mathematical certainty from our language." *Grayned*, 408 U.S. at 110.

James C. Mahan
U.S. District Judge

- 11 -

"[W]here a statute "is not concerned with either the First Amendment or the definition of criminal conduct . . . [the court] must be lenient in evaluating its constitutionality. For [a statute] to constitute a deprivation of due process, it must be 'so vague and indefinite as really to be no rule or standard at all." *Exxon Corp. v. Busbee*, 644 F.2d 1030, 1033 (5th Cir. 1981) (citation omitted). A Plaintiff can successfully sustain a challenge to a civil statute regulating commercial conduct only if he can prove that the enactment specifies no standard of conduct at all. *Pinnock v. International House of Pancakes Franchisee*, 844 F. Supp. 574, 580-81 (S.D. Cal. 1993) (citations omitted)

The challenged laws, discussed in detail above, contain guidelines which are flexible to allow for individualized assessment of each application without being bound by meticulously specific statutory restraints. *See Grayned*, 408 U.S. at 110. While not wholly exhaustive of all possible grounds to grant or deny an application, the provisions provide ample guidance as to the types of information an applicant must prove in order to have its application approved and the proper standards for reviewing an application. *See id.*

In their opposition, plaintiffs rely on a number of cases to support their position that the phrases in the NRS are unconstitutionally vague. The cases relied on, however, each implicate either a First Amendment issue or the definition of criminal conduct, which require more restrictive standards on administrative discretion. *See Chicago v. Morales*, 527 U.S. 41 (1999) (concerning criminal status); *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (concerning criminal status); *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972) (concerning criminal status); *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750 (1988) ( concerning the First Amendment). One case does not involve a vagueness claim at all. *See Yick Wo v. Hopkins*, 118 U.S. 356 (1886) (holding a statute unconstitutional on equal protection grounds).

Plaintiffs have not alleged facts that, if true, are sufficient to show the laws are "so vague and indefinite as really to be no rule or standard at all," which is the appropriate standard for statutes regulating commercial activity. *Exxon Corp. v. Busbee*, 644 F.2d at 1033. Plaintiffs have thus failed to state a claim upon which relief can be granted for vagueness. The claim will be dismissed without prejudice.

### iv.    Privileges or immunities claims

Defendants also seek dismissal of plaintiffs' fourth claim for relief, arguing that plaintiffs' complaint fails to state a claim for violation of the privileges or immunities clause of the U.S.

Constitution because "[t]he right to pursue one's chosen occupation is not of a federal character . . . ." (Doc. # 22 at 13–14).

The Supreme Court drew tight boundaries around the Privileges or Immunities Clause of the Fourteenth Amendment in the *Slaughter House Cases*, 83 U.S. (16 Wall.) 36, 21 L. Ed. 394 (1872). The Court ruled that the clause only secures those rights which "owe their existence to the Federal government, its National character, its Constitution, or its laws." *Id*. at 79. In *Merrifield,* the Ninth Circuit held that the right to pursue one's chosen occupation is not of a federal character and is therefore not protected by the Privileges or Immunities Clause of the Fourteenth Amendment. *Merrifield v. Lockyer*, 547 F.3d 978, 983-84 (9th Cir. 2008).

Accordingly, the court cannot grant the relief plaintiffs request based upon the privileges or immunities clause. The claim will be dismissed without prejudice.

**IV. Conclusion**

Based on the foregoing, plaintiffs have failed to state a claim upon which relief can be granted. Defendants' motion to dismiss will therefore be granted, and plaintiff's complaint will be dismissed in its entirety, without prejudice.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants Andrew J. MacKay, George Assad, Keith Sakelhide, Marilyn Skibinski, Liz Babcock, James Day, David Newton, Yvonne Shelton, and Lidia Aronova's motion to dismiss (doc. # 22) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiffs Danell Wilson-Perlman, Ron Perlman, Steven Saxon, and Patrick Saxon's complaint (doc. # 1) be, and the same hereby is, DISMISSED without prejudice.

The clerk shall enter judgment accordingly and close the case.

DATED March 23, 2016.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge